Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 9839 | DATE | 9/29/2003 |
| CASE TITLE | Parkman & Weston Assoc. vs. Ebenezer African Methodist, etc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court denies the parties' cross-motions for summary judgment [59-1, 59-2, 61-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 3 0 2003 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 93 |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PARKMAN & WESTON ASSOCIATES, LTD. and LARRY W. PARKMAN, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Judge Ronald A. Guzmán |
| EBENEZER AFRICAN METHODIST EPISCOPAL CHURCH; THE CITY OF EVANSTON; THE UNITED STATES OF AMERICA (HUD); THE ILLINOIS HOUSING DEVELOPMENT AUTHORITY; JACOB BLAKE MANOR, LTD., | ) ) ) ) ) ) ) ) ) | 01 C 9839 |
| Defendants. | ) | |

DOCKETED SEP 3 0 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Parkman & Weston Associates, Ltd. ("PWA") and Larry W. Parkman, have sued defendants, Ebenezer African Methodist Episcopal Church, the City of Evanston, the United States of America (HUD), the Illinois Housing Development Authority, and Jacob Blake Manor, Ltd., for copyright infringement, breach of contract, and foreclosure of a mechanics lien. Defendants filed affirmative defenses and counterclaims. Before this Court is defendants' motion to dismiss or in the alternative for summary judgment and plaintiffs' cross-motion for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court denies the motions.

## FACTS

The following facts are undisputed. On February 9, 1996, Larry Parkman, a licensed architect, executed a $192,000 architectural services contract between the "Owner," Ebenezer

African Methodist Episcopal Church, and the "Architect." (Pls.' LR 56.1(b)(3)(A) Stmt. ¶¶ 1, 8.)[1] The contract was for the design of Jacob Blake Manor, a 76-unit residence, but Parkman was discharged before construction of the building began. (*Id.* ¶¶ 1, 7.) Although the defendants have paid Parkman a portion of the contract price, they have not paid the full balance or reimbursed Parkman for other expenses he incurred on the project. (*Id.* ¶ 8.)

Parkman serves as the president, secretary, treasurer, and sole director of PWA. (*Id.* ¶ 7.) At all relevant times, PWA, an Illinois corporation, was not registered or licensed under the Illinois Architecture Practice Act. (*Id.* ¶ 3.) Parkman has admitted that he did not register his corporation PWA under the Illinois Assumed Business Name Act, and has not moved the Court to reconsider his admission under Fed. R. Civ. P. 36(b). (*Id.* ¶ 5.)

## DISCUSSION

### I. Motion to Dismiss

The purpose of a motion to dismiss is not to determine the merits of each claim but rather "to test the sufficiency of the complaint." *Youker v. Schoenenberger*, 763 F. Supp. 361, 362 (N.D. Ill. 1991). In ruling on a motion to dismiss, a court "views all of the facts alleged in the complaint, as well as any inferences reasonably drawn from them, in the light most favorable to the plaintiff." *Caldwell v. City of Elwood, Ind.*, 959 F.2d 670, 672 (7th Cir. 1992). In addition,

---

[1] The City of Evanston has an interest in the real estate because of a mortgage dated July 9, 2001. (*Id.* ¶ 5.) The United States of America, Department of Housing and Urban Development ("HUD") has an interest in the real estate because of a financing statement recorded on July 17, 2001. (*Id.* ¶ 6.) The Illinois Housing Development Authority has an interest in the real estate because of an agreement dated July 30, 2001, and because of a mortgage dated June 30, 2001. (*Id.* ¶ 7.) Jake Blake Manor Ltd. has an interest in the real estate because of a special warranty deed dated June 29, 2001. (*Id.* ¶ 9.)

the defendant bears the "burden of establishing legal insufficiency of the complaint." *Youker*, 763 F. Supp. at 363. Dismissal of a complaint is proper only when "it appears beyond doubt 'that the plaintiff cannot establish any set of facts which would entitle him to the relief requested.'" *Caldwell*, 959 F.2d at 672 (quoting *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991)).

In examining the complaint and viewing the factual allegations and reasonable inferences drawn from those facts in the light most favorable to plaintiffs, it is clear that plaintiffs have alleged sufficient facts to support their claims of copyright infringement, willful infringement, breach of contract, and mechanics lien foreclosure. Because defendants have not established the legal insufficiency of plaintiffs' claims, the Court denies defendants' motion to dismiss.

## II. Summary Judgment

Summary judgment is appropriate when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" FED. R. CIV. P. 56. In ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Initially, the party moving for summary judgment bears the burden of identifying the basis for the summary judgment motion by pointing to the parts of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that the party believes demonstrate the lack of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmovant must then show that there is a genuine issue for trial concerning issues that he or she will bear the burden of proving at trial. *Id.* at 324.

Defendants seek summary judgment as to plaintiffs' breach of contract, copyright infringement, and mechanics lien foreclosure claims. Plaintiffs have cross-moved for summary judgment with regard to their copyright infringement, breach of contract, and mechanics lien foreclosure claims, as well as defendants' Illinois Consumer Fraud and Deceptive Business Practices Act counterclaim.

Some of defendants' affirmative defenses are based on their position that PWA, not Parkman, entered into the contract with Ebenezer. However, plaintiffs seem to argue that Parkman signed the contract as an individual and not on behalf of PWA. Therefore, before the Court may address the affirmative defenses, it is necessary for it to determine who were the contracting parties.

Under Illinois law, a contract "must be construed to give effect to the intention of the parties." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). In addition, the contract "should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). Any ambiguous language in the contract must be construed against the party who drafted it. *Id.* This is because the drafter is "likely to provide more carefully for the protection of his own interests than those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning...he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert." Restatement (Second) of Contracts § 206, cmt. a (1979).

Here, the parties agree that defendants believed and intended the contract to be with PWA as a corporate entity and not with Parkman individually. (Pls.' LR 56.1(b)(3)(A) ¶ 1.) The cover page of the agreement identifies the architect as PWA and page four of appendix six states that the architect is PWA and is signed by Parkman as president of PWA. (Pls.' Ex. A; Pls.' LR

4

56.1(b)(3)(A) ¶ 1.) However, Parkman also signs the contract under "Architect" on page nine and on the amendment without indicating his title. (Pls.' Ex. A.) Any ambiguity or inconsistency that this may create must be construed against Parkman since he prepared the contract. (*See* Defs.' Ex. N, Parkman Dep. at 51-52.) Thus, the contract must be construed as entered into by PWA and not by Parkman individually.

In *People ex rel. City of Prospect Heights v. Village of Wheeling*, a corporate secretary signed a petition for annexation of land without indicating that he was acting on behalf of the corporation. 147 Ill. App. 3d 838, 840 (1st Dist. 1986). The Court held that "the signature of a corporate officer may be effective as the signature of the corporation, even if the officer fails to indicate his corporate affiliation." *Id.* Because Parkman served as PWA's president, secretary, treasurer, and sole director, his untitled signature on the contract, which identified PWA as the architect on the very first page and was signed in the appendix by Parkman as president, is sufficient to bind the corporation PWA. (Pls.' LR 56.1(b)(3)(A) ¶ 5.)

Having found that the parties to the contract were PWA and Ebenezer, the Court must next consider whether the contract (and, hence, the mechanics lien foreclosure) is void due to PWA's failure to register as required under the Illinois Architecture Practice Act. The Illinois Architecture Practice Act requires "[a]ny business…that includes the practice of architecture within its stated purposes, practices architecture, or holds itself out as available to practice architecture shall register with the Department [of Professional Regulation]." 225 ILL. COMP. STAT. § 305/21 (West 2003).

Defendants rely on *Kaplan v. Tabb Assocs., Inc.*, in which the Court voided a contract because the defendant corporation Tabb Associates failed to obtain a license under the Illinois Architecture Practice Act of 1989. *Kaplan v. Tabb Assocs., Inc.*, 276 Ill. App. 3d 320, 321 (1st

5

Dist. 1995). Although Gregory Tabb, a licensed architect who oversaw the plaintiff's project, solely owned the defendant corporation, the Illinois Appellate Court held that the violation of the Illinois Architecture Practice Act rendered the contract void. *Id.* at 322, 324.

However, another Illinois appellate court case, *Hattis Associates, Inc. v. Metro Sports, Inc.*, conflicts with the ruling in *Kaplan*. *Compare Hattis*, 34 Ill. App. 3d 125, 128 (1st Dist. 1975), *with Kaplan*, 276 Ill. App. 3d at 321. The Court in *Hattis Associates, Inc.* held that "an unlicensed corporation may contract to provide services by licensed individuals." 34 Ill. App. 3d at 128. The Court reasoned that the purpose of the Illinois Architecture Practice Act is to protect the public from unlicensed architects and not to support licensed architects. *Id.* at 129. Thus, allowing unlicensed corporations to contract to provide licensed architects does not defeat the policy behind the statute. *Id.*

A district court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). In addition, the rulings of appellate state courts should be given great weight when the state Supreme Court has not decided the issue, "unless there are persuasive indications that the state's highest court would decide the case differently." *Id.*

In light of the conflict between the Illinois appellate courts in *Kaplan* and *Hattis Associates*, the Illinois Supreme Court case of *Grody v. Scalone* is relevant in determining how the Illinois Supreme Court would rule on this issue. *Kaplan*, 276 Ill. App. 3d at 321; *Hattis Assocs., Inc.*, 34 Ill. App. 3d at 128; *Grody v. Scalone*, 408 Ill. 61, 62 (1950). In *Grody*, after the plaintiff John Grody, working under the assumed business name of Modern Furnace Company, installed a furnace in the defendant's home, he then sought to recover the unpaid balance of

6

$840. *Grody*, 408 Ill. at 62. The defendant, Mary Scalone, alleged that because Mr. Grody had failed to register his assumed business name of Modern Furnace Company, thereby violating the Illinois Assumed Name Act, he was in business unlawfully and thus could not legally enforce their contract. *Id.* The Illinois Assumed Name Act prohibited anyone from conducting business "under an assumed name unless the name [was] registered" and penalized violators with a fine of $25-100 and/or imprisonment for 10-30 days. *Id.* at 63.

In *Grody*, the Illinois Supreme Court held that because the statute already expressly provided a penalty for conducting business in violation of the Illinois Assumed Name Act, it would "not seem reasonable, under conditions where a person has furnished material and labor on a just basis...[that] the contract...be held void...[and] [t]o deny recovery...would be affording a means by which [a] person having received a benefit from another would be enabled to retain it without compensation." *Id.* at 64. Thus, because the statute already provided a monetary or imprisonment penalty for violations of the act, the contract made in violation of the Illinois Assumed Name Act would not be held void as an additional penalty. *Id.* Applying the reasoning of *Grody* to the instant case, the inclusion of penalties, such as a misdemeanor and a felony, in the Illinois Architecture Practice Act indicates that a contract made in violation of the act should not be voided as an additional penalty.

The reasoning of the Illinois Supreme Court in *Grody* contrasts with the reasoning of the Illinois Appellate Court in *Kaplan*. *Kaplan*, 276 Ill. App. 3d at 324; *Grody*, 408 Ill. at 64. In *Kaplan*, the Illinois Appellate Court noted that the Illinois Architecture Practice Act provides specific penalties for violations, such as "a Class A misdemeanor for the first offense and a Class 4 felony for a second or subsequent offense" and that the language of the statute "indicates a legislative intent to make" the act mandatory. *Kaplan*, 276 Ill. App. 3d 323-24. Because the

7

defendant violated the Illinois Architecture Practice Act, a mandatory act that prescribed a penalty, the Court in *Kaplan* held that the contract was void. *Id.* at 324. In contrast, in *Grody*, because the Illinois Assumed Name Act already provided a penalty, the Illinois Supreme Court held that a violation of the act did not void the contract between a plaintiff who had failed to register his assumed business name and the defendant, for whom the plaintiff had provided services. *Grody*, 408 Ill. at 64.

Another Illinois Supreme Court case, *Paddock, Inc. v. Glennon*, also supports the argument that even though PWA violated the Illinois Architecture Practice Act, the owner of the corporation, Parkman, was a licensed architect at all relevant times and so the contract should not be voided. 32 Ill.2d 51, 54 (1965). In *Paddock*, the plaintiff, a pool construction company, entered into a written contract with the defendants for the construction of a swimming pool and bath house. *Id.* at 52. When the plaintiff sued for the remaining balance owed, the defendants pleaded various defenses, one of which alleged that the plaintiff should be denied recovery on the contract because of the plaintiff's use of unlicensed plumbers. *Id.*

The Illinois Supreme Court in *Paddock* recognized that while "a contract made by an unlicensed individual calling for his personal services, or by a firm having no licensed officers or employees, is unenforceable...an unlicensed owner or firm may contract for the performance of services by licensed individuals." *Id.* at 54. Because the plaintiff's corporation had a corporate officer who was licensed and who had supervised all the installation, the plaintiff was "capable of entering into a valid contract," despite any possible violation of the Illinois Plumbing License Act. *Id.*

Thus, both the Supreme Court cases of *Paddock* and *Grody* indicate that the contract made by the unlicensed corporation PWA should not be voided, because PWA employed

8

Parkman, a licensed architect. *Paddock*, 32 Ill.2d at 54; *Grody*, 408 Ill. at 64. Because the Illinois Architecture Practice Act already provides for a specific penalty of a misdemeanor or a felony, voiding the contract should not be imposed as an additional penalty on the plaintiffs. In addition, allowing the contract does not diminish the Illinois Architecture Practice Act's purpose of protecting the public from unlicensed architects since Parkman was a licensed architect at all relevant times. (Pls.' LR 56.1(a)(3) ¶ 1.) In sum, the failure of PWA to obtain a license under the Illinois Architecture Act does not void the contract between defendants and PWA. Accordingly, defendant's motion for summary judgment based on their reliance on affirmative defense 1 is denied. Further, defendants' arguments regarding other affirmative defenses raised in the alternative if the Court were to have found that Parkman was a party to the contract are deemed moot. (*See* Defs.' Mem. Supp. Mot. Summ. J. at Section II.)

In addition, plaintiffs' cross-motion for summary judgment as to the breach of contract claim must also be denied. The parties dispute the material facts. Plaintiffs claim that they were wrongfully discharged from the subject contract and that in breach of its contract obligations, the defendants have not paid for architectural services rendered. (Pls.' LR56.1(a)(3) ¶¶ 37-38; Defs.' LR 56.1(a)(3) ¶ 8; *id.* Section II ¶¶ 2, 10, 12.) Defendants argue that when they failed to yield to the demand of the architect, plaintiffs quit the development and filed suit. Defendants also assert that because Parkman was familiar with HUD procedures, he should have anticipated any delay in payment. (Defs.' LR 56.1(b)(3)(B) ¶ 6.) Instead, Parkman "said he wasn't going to do any more work...unless some arrangements were made for additional compensation. (*Id.*) However, plaintiffs deny this. Because there exist genuine issues as to material facts with regard to the breach of contract claim, the Court denies plaintiffs' cross-motion for summary judgment.

Defendants further argue that plaintiffs should not be able to recover on their breach of contract and copyright infringement claims due to their unclean hands, a defense asserted because of plaintiffs' alleged violation of the Illinois Assumed Name Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Business Corporation Act, and the Illinois Architecture Practice Act. In response, plaintiffs assert that the clean hands doctrine is applicable only to claimants seeking equitable relief, while here they seek actual damages. (Pls.' LR 56.1(a)(3) ¶ 7.)

The Supreme Court recognizes the "equitable maxim that 'he who comes into equity must come with clean hands.'" *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). However, in certain situations the clean hands doctrine may bar "a claim at law for damages." *Urecal Corp. v. Masters*, 413 F. Supp. 873, 876 (N.D. Ill. 1976). For example, "where equitable and legal claims are joined, the doctrine of 'clean hands,' if indicated by the facts, should preclude recovery on both claims." *Id.* Yet, the unclean hands defense requires that the acts of the person seeking relief "rise to the level of unconscionability that calls into question the integrity of the court." *Ristvedt-Johnson, Inc. v. Brandt, Inc.*, 805 F. Supp. 549, 556 (N.D. Ill. 1992). "[G]arden-variety inequitable conduct without blatant wilful fraud" does not constitute the type of unconscionability that will warrant the application of the unclean hands defense. *Id.*

In *Leo Feist, Inc. v. Young*, when the plaintiff sued for copyright infringement, the defendant asserted the defense of unclean hands based on the plaintiff's failure to comply with a Wisconsin licensing statute. *Leo Feist, Inc. v. Young*, 138 F.2d 972, 973 (7th Cir. 1943). The Court held that the plaintiff's violation of a state licensing statute did not bar his federal copyright suit under the clean hands doctrine. *Id.* at 975. Thus, a violation of the statute did not

constitute the type of unconscionability necessary for the unclean hands defense to apply. *Id.*

Additionally, in *Thompson v. Cadillac*, the defendant maintained that because the plaintiff had failed to register his corporate name under the Assumed Name Act and had failed to incorporate under the Business Corporation Act, he should not be allowed to maintain his suit. *Thompson v. Cadillac*, 187 Ill. App. 3d 104, 108 (2nd Dist. 1989). The Court noted that both the Business Corporation Act and the Assumed Name Act already provided for the penalties of a petty offense and misdemeanor, respectively, and thus a violator of the statutes could still sue upon a contract. *Id.* at 108-09.

Here, any alleged violations of various statutes, such as the Assumed Name Act, the Business Corporation Act, and the Architecture Services Act, should not bar plaintiffs' claims in this case. These statutes already provide separate penalties for violations, and so the plaintiffs should not be further penalized for any violations by barring of their claims. *Thompson*, 187 Ill. App. 3d 108. Moreover, defendants have not shown that plaintiffs' alleged violation of the Assumed Name Act, Architecture Services Act, Consumer Fraud and Deceptive Practices Act, or Business Corporation Act rises to the level of blatant willful fraud required for a finding of unconscionability, and thus the unclean hands defense cannot prevail. Therefore, the Court denies defendants' motion for summary judgment with regard to their affirmative defense that the unclean hands doctrine bars plaintiffs' claims.

Defendants next argue that plaintiffs' mechanics lien foreclosure claim should be barred because (1) the nonlienable work cannot be separated from the lienable; (2) the construction extras were unwarranted, and (3) plaintiffs' constructive fraud by knowingly filed a lien with a substantial overcharge. "A mechanics lien must be based upon a valid contract...[although] the mere fact that [the contract] was performed in violation of [a] law will not invalidate the

11

resulting lien if not seriously injurious to the public order." *Paddock*, 32 Ill.2d at 53-54. If nonlienable items cannot be separated from the lienable ones, then the entire lien is defeated. *Verplank Concrete & Supply, Inc. v. Marsh*, 40 Ill. App. 3d 742, 744 (4th Dist. 1976).

Defendants assert that the entire lien should be defeated because the nonlienable work cannot be separated from the lienable, the extra work was unwarranted, and plaintiffs engaged in constructive fraud by knowingly overstating the amount of the lien. It is clear from Parkman's testimony at his deposition and from his affidavit that plaintiffs have raised a genuine issue as to whether the lienable work is separable from the nonlienable work and whether the extra was warranted and authorized. (Pls.' Ex., Parkman Aff. ¶¶ 8, 10; *see, e.g.*, Pls.' Ex. N, Parkman Dep., at 12-14, 28-30.) In addition, plaintiffs claim that they actually understated the amount of the mechanics lien. Thus, because the parties dispute these issues of material fact, the Court denies the parties' cross-motions for summary judgment as to the mechanics lien foreclosure claim.

The next issue is whether summary judgment should be entered in favor of either party with regard to the copyright infringement claim. In order to prove copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent element of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Copyright infringement may be inferred if "the defendant had access to the copyrighted work, and the accused work is substantially similar to the copyrighted work." *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

Here, the parties dispute the facts required to prove copyright infringement. Plaintiffs state that defendants are currently engaged in the construction of Jacob Blake Manor by copying and recopying without authorization the plaintiffs' copyrighted construction drawing and

specifications. (Pls.' LR 56.1(a)(3) ¶¶ 20-21.) In response, defendants deny that Parkman retained any rights to copyright after his default on the contract and also claim that they copied only significantly modified versions of plans prepared by PWA. (Defs.' LR 56.1(b)(3)(A) Resp. to ¶¶ 20-21, 28.) Defendants argue that under the HUD requirements specified in the contract, "if the project is not completed, and there is a default, HUD may use the drawings or specifications to complete the construction of the project, without additional charge." (Defs.' LR 56.1(a)(3) ¶ 2.) In so arguing, defendants apparently rely on an exclusive or nonexclusive license defense in relation to their affirmative defense 12. However, plaintiffs then counter that there was no default and that they were wrongfully discharged by defendants. Because the parties dispute these issues of material fact, summary judgment of the copyright infringement claim is denied.

Lastly, the Court addresses plaintiffs' motion for summary judgment as to defendants' counterclaim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.* Plaintiffs argue that the Act should not apply to architects because it does not pertain to extensively regulated professions such as attorneys. *Cripe v. Leiter*, 703 N.E.2d 100, 107 (Ill. App. Ct. 1998). However, plaintiffs have not pointed to any cases that hold that architects are exempt. Defendants argue that the Act applies to architects because they are not as highly regulated as attorneys, who "have a fiduciary responsibility to their clients," and because other professionals, such as accountants, are subject to the Act. (Defs.' LR 56.1(b)(3)(A) ¶¶ 37, 39.) The Court agrees with defendants and holds that architects are distinguishable from attorneys because, unlike the case with architects, attorneys are deemed fiduciaries as to their clients, which provides clients additional protection from the law. Plaintiffs have not presented any persuasive authority to convince the Court that architects

should be provided a similar safe harbor from liability under the Act. Accordingly, the Court denies plaintiffs' motion for summary judgment as to the inapplicability of the Illinois Consumer Fraud and Deceptive Business Practices Act to architects.

## CONCLUSION

For the foregoing reasons, the Court denies the parties' cross-motions for summary judgment [doc. nos. 59-1, 59-2, 61-1].

**SO ORDERED**  **ENTERED:** 9/29/03

HON. RONALD A. GUZMAN
**United States Judge**